The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Neris Montilla et al. v. Federal National Mortgage Association et al. Appeal number 20-1673. Attorney Dion, please introduce yourself for the record and proceed with your argument. Yes, good morning, Your Honors. May it please the Court, Attorney Todd Dion on behalf of the appellants Neris Montilla and Michael Kirikakis. I'm asking for an initial 13 minutes of argument time, 10 minutes of which I will handle and 3 minutes of which Attorney Fishback will handle. With 2 minutes of rebuttal time that Attorney Fishback will handle as well. I'm sorry, you mean a minute apiece on rebuttal time? You're asking for your co-counsel's rebuttal as well as your own? No, Your Honor. I'm asking for an initial 10 minutes that I will handle. The remaining 3 minutes of 13 minutes initial time, amici counsel Attorney Fishback will handle. And I'm asking that Attorney Fishback handle 2 minutes of rebuttal time as well. No. You were given a total argument time. If you want rebuttal time, it comes out of your total argument time. Proceed. The question presented in this appeal is whether or not the arrangement or the relationship between the Federal Housing Finance Agency, otherwise known as FHFA, and the Federal National Mortgage Association, otherwise known as Fannie Mae, as created and allowed by the Housing and Economic Recovery Act of 2008, otherwise known as HERA, rendered FHFA and Fannie Mae government actors under the Fifth Amendment's Due Process Clause when these entities engaged in the acts of non-judicial foreclosure on the appellant's properties. First of all, with regard to FHFA, the focus of FHFA's argument is whether or not FHFA stepped into the shoes of Fannie Mae as a private entity by virtue of HERA's succession clause. First of all, this argument is not supported by the facts because Fannie Mae did not even hold and were not even assigned these mortgages and likewise any pre-existing contractual right to foreclose under these mortgages until 7 and 8 years after the conservatorship was created in the first place. Therefore, FHFA did not inherit or succeed any pre-existing contractual right to foreclose on the properties under HERA's succession clause because Fannie Mae did not hold the mortgage contracts and an entity cannot inherit or succeed the rights of a contract that did not yet even exist to that entity. Alright, counsel, let's move on. Let's assume that we've heard they're not actually a conservator. Assume they're a conservator and move on. Secondly, your honor, FHFA did not direct Fannie Mae and its servicers to conduct non-judicial foreclosures until they made an independent policy decision after the conservatorship was created as well. So, despite FHFA's clear ability to direct Fannie Mae and its servicers to conduct judicial foreclosures in accordance with clear Rhode Island statutory law, FHFA made an affirmative and independent policy decision to choose this less expensive mode of non-judicial foreclosure by directing Fannie Mae and its servicers to conduct the non-judicial foreclosures after the conservatorship was created. I think it's significant that shortly before this non-judicial foreclosure policy directive was initiated, an amendment was made to the conservatorship in 2012 which allowed FHFA to siphon the net profits of Fannie Mae into the United States Treasury, commonly referred to as the net worth suite. Counsel, what difference does it make if they made policy choices? The decision was made by FHFA, not Fannie Mae, pursuant to its contractual rights. FHFA was designed to serve a government function of increasing the Treasury's bottom line because non-judicial foreclosure is a more streamlined and less expensive mode of foreclosure than judicial foreclosure. Both private corporations and government entities are entitled to choose methods that save money, either for the taxpayers or the shareholders. So I ask you again, move on. Can you address the issue of LeBron and permanence? That's the basis of Smith's ruling. Let me direct you to that. Yes, this leads the analysis to the conclusion that the assertion that regardless of whether or not FHFA stepped into the shoes of Fannie Mae, Fannie Mae is still a government actor in this case under the LeBron test which requires FHFA have permanent authority over Fannie Mae, which I would argue they in fact do. An example would be this label of conservatorship does not necessarily imply a temporary arrangement. A conservatorship can be temporary, but in many cases it's permanent. For example, if a conservator indefinitely controls a mentally incapacitated human being, at least one can foresee a definitive end to that conservatorship. Five minutes remaining. Obviously a human being can only live so long, but in the case of Barr, the conservatorship could theoretically go on forever because the world is not a human being, but a government-sponsored enterprise with no predictable lifespan. Mr. Dionne, you used the term theoretically go on forever, so I think you're implicitly saying that theoretically go on forever we should equate with permanence? Well, the conservatorship could go on for as long as Fannie Mae is in existence, which could be forever. Yes, but my question is the LeBron test which I assume you're asking us to apply has the requirement of permanence. You're speaking in terms of could go on forever. That doesn't quite sound to me like permanent. Permanent sounds like will go on forever. Well, I would argue indefinite in this case when you have a, I know the lower court cited some statements approximately two years ago by the secretary of the treasury and the FHFA director suggesting, and I stress only suggesting, that they are committed to ending the conservatorship. But to me this sounds like this is just words, more labels, when the practical reality test under the American Railroads test, the practical reality shows no definitive plan to end the conservatorships, and they don't have to under HERA in the first place. So when you have a statutory scheme such as HERA which allows this conservatorship to continue indefinitely, in perpetuity, without limitations, not to mention while siphoning billions in profits from the so-called ward into the United States treasury, I don't believe that's consistent with, and I think it in fact directly contradicts this, I would argue erroneously labeled temporary nature of conservatorship. So what precise definition of permanence would you urge us to adopt? That when you're looking at the practical reality test, when there are no limitations under the statute that is establishing the conservatorship, and that it could theoretically go on forever, I mean, the conservatorship's purpose is supposed to be to return the ward to a sound and solvent condition. How is it ever going to return to a sound and solvent condition when FHFA can do whatever they want and siphon the profits out of Fannie Mae into the treasury after they've already been paid back the money that they put into Fannie Mae, and just let it prolong and go on forever? It's a cycle that could go on forever, and I would say that is permanent. When the conservator has the authority to do whatever it wants and prolong the life of the conservatorship, that in fact is temporary. I mean, that is permanent. I don't believe it's not inherently temporary. The label of conservatorship does not necessarily imply a temporary arrangement. The conservatorships are permanent in many cases, and I would say they're permanent in this case. You would seem to then turn conservatorship into the equivalent of acquisition, which would be permanent. Well, that's what HERA allows them to do in this case and continue theoretically forever, and I say forever. This is going to keep going on. But HERA says that the purpose of the conservatorship is to reorganize and rehabilitate or wind up its affairs, so it does have a limitation. Well, it's not a definitive limitation, and it in fact goes against the limitation when the conservator is taking the profits out of the ward into the United States Treasury. I would argue that that is a breach of any perceived fiduciary duty on the part of the conservator to its ward. And I think that's one of the distinctions that Judge McConnell was making in the Sisti decision, the distinction between a receiver as opposed to a conservator. A conservator is more analogous to a conservator of a permanently mentally incapacitated person, whereas a receiver is more analogous to the decedent of an estate or the executor of an estate, where there's a definitive end. Could you address this issue that concerns me some, which is a conservator generally owes certain duties to the entity over which the conservatorship reigns. And if we deem that in this instance that because the government is the conservator, the government, having stepped into the shoes, also owes duties to the debtor that the entity subject to the conservatorship did not owe, doesn't that introduce a complexity or possible conflict here of decision-making at the level where the conservator would have to take into consideration rights that are potentially adverse to the ward? Yes, I believe that's true, Your Honor. I think there is a conflict where the conservator is taking money out of its ward and it's prolonging whatever perceived temporary nature of the conservator there is. There is no temporary label of conservatorship in this situation, because the conservator can do whatever it wants. Time has expired. Finish your answer. When the statutory scheme in Harrow, it's not a definitive ending of the conservatorship to say that it's to return to a sound and solvent condition, because they don't have to. They don't have to under the language of that statute, and it allows them to prolong the conservatorship for as long as they want while having their cake and eat it too and taking the profits out of the ward. Thank you. Thank you, Your Honor. Thank you, Attorney Dionne. You can mute your audio and your video at this time. Attorney Fishback, if you could unmute your audio and video at this time. And, Judge, I apologize, I just want to clarify, in the original breakdown, Attorney Fishback had five minutes of argument time assigned to him. Then he may have five minutes now. Thank you, Judge, I appreciate that. And, Mr. Fishback, if you want any of that time for rebuttal, you better tell me now. Good morning, Your Honor. Yes, I would like two of the five minutes for rebuttal. All right. Thank you very much. May it please the Court, this is Steve Fishback, Counsel for Appellants, amici. Thank you very much for allowing me to participate in today's argument. Amici's brief explained that the different outcomes in Montia and the Boston-Siste cases were due to arguments made in Boston-Siste that were not made in Montia. And I just want to address two of them in my argument. First is that FDIC v. Meyer is directly on point and it, not O'Melveny, governs the determination of FHFA acting as conservative status. And I will refer to FHFA as the agency. And second, that LeBron's three-point test is not the exclusive method for determining Fannie Mae's governmental actor status. This Court is the first appellate court in the nation to decide whether the agency's governmental actor status is governed by Meyer instead of O'Melveny. Since this issue has been argued by other counsel and will be argued later, I will limit my remarks to just one observation and may address the issue further on rebuttal. The dismissal of the Bivens claim in Heron was correct, but was based on Apolli's flawed interpretation of O'Melveny. Had the agency and Fannie Mae moved to dismiss the Bivens claim, citing Meyer instead of O'Melveny, a ruling on the governmental actor status would not have even been necessary since Meyer itself barred any kind of Bivens claim asserted against a federal agency. Next, as to LeBron's three-part test, LeBron states that the Constitution constrains governmental action by whatever instruments or in whatever modes those actions may be taken. Thus, if a government-created corporation fails the LeBron test, it's a private actor, not a government actor. Brentwood states that the actions of private entities are subject to constitutional constraints when those actions are fairly attributable to the government. What actions are fairly attributable to the government is a matter of normative judgment. As this court observed in Loggio Dice, they're sensitive to fact situations and lack neat consistency. The facts pleaded by appellants show that Fannie Mae's foreclosure on a parent's homes are plausibly attributable to the agency. Counsel, I have a question. You're here as amicus. The parties to the case addressed the Meyers and O'Melveny question. You are now suggesting to us that there should have been a separate test of which you attribute to Brentwood, which is fairly attributable. Amicus are not free to raise arguments that the parties did not make. Do you concede the parties did not make your alternative argument? With all due respect, Your Honor, I was counsel in Boston SISTE, and this was one of the arguments that we made before Judge McConnell. Judge McConnell chose not to address it because he found that Fannie Mae satisfied the LeBron test and was a governmental actor. Okay. Thank you. Sure thing. So are you precisely saying that if we found that the permanence test under LeBron is not satisfied, that indefinite is not the same as permanent, I think you're arguing that we should deem that not decisive. Correct. That's exactly right, Your Honor. We usually don't say that Supreme Court tests aren't decisive unless the Supreme Court has been pretty clear, so I don't see how Meyers changes that. How does Brentwood change it? Meyers only relates to FHFA's governmental status, not Fannie Mae's. So Brentwood's application is to Fannie Mae, not to FHFA. And what is it in Brentwood that tells us that the third prong of LeBron is no longer controlling? It's LeBron itself that says that governmental action is constrained in whatever form it takes. So if an entity is a private entity under LeBron's test, that's where Brentwood comes into the picture. Go ahead. Finish. Brentwood sets out that there are four different theories by which a private entity can be viewed as the government. And what I'm saying is that the facts pled by appellant can be addressed by any one of those four theories, because the foreclosures on appellant's homes are fairly attributable to the government by virtue of the government, by FHFA's enacting the strategic alignment initiative, and it was that unconstitutional policy that is the reason why this court should reverse the Montoya case. It's the district court's decision. Okay. Thank you. Judge Kayada, go ahead. So could you describe to me under your theory when the government would take over, put into conservatorship a bank, and then not be entitled to exercise all the rights of the bank in the same way that the bank would have? Well, the point here is that when these mortgages were acquired by Fannie Mae, it was actually FHFA acquiring them because they had complete control of Fannie Mae at the time these mortgages were acquired by Fannie Mae. So you would draw a line between the mortgages that existed prior to the conservatorship and those that came into existence or at least were acquired by Fannie Mae after the conservatorship? Well, I would just want to qualify that by one point. Mortgages that existed before the conservatorship only contained the right to foreclose. If the default occurred after the conservatorship began, then it's not being covered. The right to foreclose is there, but the action of foreclosure is being undertaken by a governmental actor to serve the purposes of conserving and rehabilitating and reorganizing Fannie Mae. So it sounds like the ward of the conservatorship effectively loses rights, ends up in a worse position because its conservator cannot exercise rights that the ward would have been able to exercise but for the conservatorship. No, I don't think you understand what I'm saying. What I'm saying is that it's… Well, Mr. Fischbach, I will tell you I don't either, so proceed. What I'm trying to say, Your Honors, is that once the government is in control as it was after it took over the conservatorship, any actions that are taken after are actions of the government because Fannie… Let me see if I can be more precise with an example. Let's assume I take out a mortgage in Rhode Island and you're my bank. You have a right at that time that if I default, you can do a nonjudicial disclosure. That's one of the sticks in the bundle of sticks that you have under our relationship. And now suppose you then have trouble and are taken over by Fannie Mae or FHFA and put into conservatorship, and then I default. What I hear you saying is that the bank would have effectively lost its right to do a nonjudicial disclosure precisely because it was taken into conservatorship by a federal agency. And so the ward would therefore be worse off just because it was put into conservatorship because the conservator would not have the full array of powers to recover assets for the ward. That's what I hear you saying. This is where I would like to explain it. Fannie Mae and a bank are not the same. Fannie Mae was created by Congress to serve certain governmental functions. Get to the point. We know all that. Get to the point. The point is that the ward is a private entity to begin with, whereas Fannie Mae was set up by the government and then taken over by the government, and Congress directed FHFA to give FHFA full authority over Fannie Mae. And when exercising that authority, it only is supposed to consider the interests of what might be best for rehabilitating Fannie Mae or what's best for the agency itself, and that's in the PERI capital case. Okay. Mr. Fishback, we have your point. That's it. Thank you so much, Your Honor. I appreciate it. Thank you. Thank you, Mr. Fishback. Please mute your audio and your video at this time. Attorney Johnson, if you could unmute your video and audio and introduce yourself on the record to proceed. Thank you, Your Honors. I'm Michael Johnson of Arnold and Porter. I represent the Federal Housing Finance Agency. I'm speaking on behalf of all appellees. The court should affirm the judgment in this case. The question for the court is whether there was government action in connection with a nonjudicial foreclosure. A nonjudicial foreclosure that the plaintiff agreed its mortgagee could undertake. In writing, the court has to answer that question with regard to two distinct entities. First, the Federal Housing Finance Agency, which is the conservator of Fannie Mae, and second, Fannie Mae, an otherwise private corporation that is in FHFA's conservatorship. Neither is a government actor for purposes of the due process claim at issue here, and for that reason, the court should affirm. The court is not writing on a blank slate here. There is an extensive body of jurisprudence addressing the alleged status of Federal Financial Agency receivers and conservators who operate under substantially identical statutory schemes. Minister Fishback carefully cameoed in a statement suggesting that this was an issue of first impression. It's not. The D.C. Circuit in the Heron case specifically held that FHFA was not a government actor. It did not become one. It did not become one in its separate capacity as conservator. Now, it made that ruling, Mr. Fishback is correct, not for purposes of a claim pled directly against FHFA as conservator. That's because there wasn't one. The D.C. Circuit made that ruling for purposes of determining whether the FHFA conservator's control over Fannie Mae was governmental control, and the D.C. Circuit's analysis was no, the conservator is not governmental. It acquires the private status of what we've been calling this morning the ward, the entity in conservatorship. Now, I do want to talk a little bit more about FHFA's status because if the court finds that FHFA is not a government actor, then many of the arguments about Fannie Mae slip away. The conservator's control would not be governmental, and therefore we really don't even need to reach the permanence question. The conservator would not be acting as the government, so any sort of entwinement or entanglement theory under Brentwood or any other Supreme Court decision would fall away because it wouldn't be the government that was working with Fannie Mae.  So let me start with Fannie Mae. As I said, the D.C. Circuit in Heron did make a finding that FHFA as conservator is not a government actor. That ruling was well thought out, well reasoned, and should be adopted, I respectfully submit. Plaintiff's answer is no, and Mr. Fishback primarily answers, no, we need to look at the Supreme Court's Meyer decision, and somehow the Meyer decision in which there was no government actor defense presented and the court never reached a government actor issue on its own, Mr. Fishback and plaintiffs suggested, no, Meyer somehow implies something about government actor status. Now their theory, I think, is that because the FDIC and the RTC, the entities at issue in the Meyer case, had a sue-and-be-sued clause in their organic statute, you can therefore draw a line from sue-and-be-sued clause to government actor because as Judge McConnell suggested in the Boston City cases, you only get a sue-and-be-sued clause if you have sovereign immunity to waive, and therefore if you have sovereign immunity, you must be a government actor, so we can just draw this arrow directly from sue-and-be-sued clause to government actor status. That's wrong, and there's three ways I can explain why it's wrong. First, it ignores an admonition the Supreme Court carefully, thoughtfully, expressly included in the Meyer decision itself. At 510 U.S., spanning 483 to 484, the Supreme Court says you cannot conflate two analytically distinct inquiries. On the one hand, sue-and-be-sued clause, sovereign immunity, a jurisdictional inquiry. On the other hand, the merits of a due process claim. They're a Bivens claim, but we can take it to mean the merits of any due process claim. The Supreme Court said, do not conflate these, do not take what we're saying about jurisdiction and apply it as if we were saying something about the merits of a government actor-based due process claim. Don't do this. That's exactly what the plaintiffs want to do with Meyer. The Supreme Court said not to. The Supreme Court was wise to say not to, because if we think about that arrow from sue-and-be-sued clause directly to government actor, what would it prove? It would prove that any entity Congress created and granted a sue-and-be-sued clause must be a government actor, and we know that's false. We know it's false because there are so many Congressional-created enterprises that have sue-and-be-sued clause that no one would think of as a government actor for constitutional purposes. I'll start with the enterprises themselves, Fannie Mae and Freddie Mac, and that's the exact sue-and-be-sued clause the district court would have to rely on and this court would have to adopt and plaintiffs argue. Before conservatorship, the enterprises were held not to be government actors, yet they had sue-and-be-sued clauses in their federal charters. They're not alone by any means. Entities that courts have looked at time and again, the Red Cross, the U.S. Olympic Committee, congressionally created, have some purposes that some people might think are public or governmental in nature, yet not government actors for purposes of constitutional claims. And that's just the tip of the iceberg. If we scratch below that, we get to a layer of entities that are congressionally created and have sue-and-be-sued clauses, but in no way, shape, or form. There's no universe where anyone would think of these as government actors. I'm thinking of the Boy Scouts, the Girl Scouts, the Future Farmers of America, the American Legion. There's a raft of them in the U.S. Code, and if plaintiff's theory was correct, every single one of them would be a government actor for purposes of a due process claim. That's just not correct, Your Honors. The third reason why I think we can say plaintiff's Meyer argument is wrong is that before Meyer and after Meyer, courts of appeals looked at FDIC receivers and held them not to be government actors. Of course, the Heron case from the D.C. Circuit falls into that after Meyer category, but to me, the more interesting set of cases are three FDIC receivership cases, the Fifth Circuit's decision in Besborn, and then the Ninth Circuit's decisions in Ely and Hefner. Besborn comes before Meyer, Ely and Hefner come after Meyer. They all relate to a common fact pattern. The FBI receiver may be the RTC in one or the other of them, but they all operate under a substantially identical statute that's substantially identical to FHFA's. The issue is whether if the receiver pursued a claim for punitive damages during the receivership, until the receivership, there is no receiver. So this issue only comes up with regard to post-receivership conduct. If the receiver pursues a claim for punitive damages, does that trigger the Dull Jeopardy clause? So for constitutional purposes, is a receiver acting during the receivership deemed governmental? Fifth Circuit in Besborn, no. Ninth Circuit in Ely, no.  Mr. Johnson, a pause for a moment. I believe Judge Kayada has a question. Yes, could you focus a bit on the FHFA? Prior to putting Fannie Mae into conservatorship, could the FHFA have required Fannie Mae to use nonjudicial foreclosures as a matter of general policy to the extent they're available in the state? In other words, did it have a regulatory relationship with Fannie Mae?  FHFA, in its separate capacity as a regulator, acted much the same way as the Office of the Comptroller of the Currency, acts as a regulator of national banks, or the FDIC acts for some banks. So that's what I thought. So here, when decisions were made as to what Fannie Mae would do, was FHFA acting as regulator or conservator? Well, Your Honor, the plaintiffs allege that only acts that FHFA took as conservator. Now, they point to some statements in their complaint that use the word regulator. Those are very general, high-level statements of what FHFA is. There is no allegation that FHFA did anything relating to this foreclosure in its capacity as regulator. So it's possible that, for example, the way the Office of the Comptroller of the Currency regulates the way banks can make and enforce loans, FHFA has regulatory authority over Fannie Mae and Freddie Mac in the way they treat the loans they have purchased. But it did not do anything related to this foreclosure using any of that regulatory authority. Plaintiffs themselves point only to something called the SAI, the Servicer Alignment Initiative, a document they point to states very clearly on its face that FHFA promulgated the SAI as conservator. So what we've got here is a theory that it's the conservatorship that makes FHFA governmental in the way it acted with regard to Fannie Mae in these cases. And there's just no legal basis for that. Now, of course, Besborn, Ely, and Hefner involve receivers. And FHFA now sits as conservator, not receiver. But the statutory powers, protections, and privileges are exactly the same. If one reads section 4617, one will see that the succession provision, which authorizes FHFA as conservator or receiver to exercise the powers, rights, titles, and privileges of the enterprises and their boards of directors and their shareholders, it's the same. There's no room to say that in terms of rights, titles, powers, privileges, duties, any of that stuff, that a conservator is different from a receiver. Now, plaintiffs argue that Judge McConnell's decision in Boss and Sisti correctly finds a difference. I respectfully say that departs from the text of the statute, and we should stop right there. But even if we want to go beyond it and say, well, if there were no statute and we wanted to think about this, is there any reasoning that could support it? Judge McConnell relies on a law review note that says, hey, Treasury is a dominant shareholder. And in some circumstances, dominant shareholders have fiduciary duties. Therefore, FHFA has a fiduciary duty. Now, if that reasoning breaks down, the first parts may or may not be correct. We could have a big debate about that. We don't need to have that debate because there's just no basis to say that even if we assume Treasury is a dominant shareholder, that tells us something about FHFA. They're different. You can't assume the answer to the question that one government agency might have a fiduciary duty means the conservator is a government agency for these purposes. Mr. Johnson, you know, at the heart of this case is the ruling by Judge McConnell and the related cases rejected in this case, that it is the fact that this conservatorship has gone on for a long time and there is no end in sight. And so Judge McConnell says, I don't have to pay attention to the congressional language that says this is temporary. He then says, so I look to the practical reality. I think I'm entitled to do that. And the practical reality is that this is pretty much left to people's discretion and there aren't clear benchmarks at which point the conservatorship ends. Mr. Dion referred to the fact that he says two years ago, there was some attention to possibly ending the conservatorship. Could you update us on what has happened on that issue of ending the conservatorship over the last two years? I can in general terms, Your Honor. I know that it's a priority for the agency to fulfill that objective of reorganizing and rehabilitating. And there have been great strides made. Now, it took extraordinary investment by the United States Treasury to make much of the progress that has taken place possible. And so, yes, Treasury as an investor has gotten some returns on its investment. Now, it's again a logical fallacy to say that if the Treasury got back as much in dollars as it invested several years ago, that means it's over. I would think like if you're three years into a five-year car loan and you've paid the bank as much as they lent you, does that mean you've paid off your loan? No, of course not. Time has expired. Wrap up your answer. Has there been any other explicit statements about a time frame for ending the conservatorship? There's not. There haven't been, Your Honor, and that makes this at its most, much like the example the Supreme Court gave in the LeBron case. This is 513 U.S. at 398, where the Supreme Court said where shares in a private corporation come into the government's ownership, that is an example of temporary rather than permanent control. So if everything plaintiffs say about the indefinite future conservatorship is true, and there are reasons to think it won't be. FHFA is working very hard to end the conservatorship. But even if no one knew and there was no statutory criteria of rehabilitation, reorganization, or winding up, it would still at most be the same control that a government agency would have as owner of a controlling block of shares in an otherwise private corporation. And that's the example the Supreme Court used for control that is temporary, not permanent. Okay, thank you, Mr. Johnson. Thank you. Thank you, Your Honor. At this time, Mr. Johnson should mute his... At this time, Mr. Johnson should mute his audio and video, and Attorney Fishback, you should unmute your audio and video. And you have two minutes rebuttal, sir. Please reintroduce yourself on the record. Again, Stephen Fishback, counsel for Appellant Zemecki. The appellees note in their brief that a Bivens claim necessary requires a defendant that's subject to the Constitution. And in Meyer, the first sentence, it shows that the Supreme Court was considering extending Bivens from one form of governmental actor, federal officials, to another form of governmental actor, a federal agency acting as receiver. It is expressly on point. The court was completely aware of what it was dealing with, and in a subsequent decision... There's nothing in that decision that says that the federal agency had to comply with the due process clause of the Constitution. That's because the court, in a footnote, mentioned that they didn't address that issue because they found there was no Bivens claim. There was no need for the court to address the merits of the due process. Right, so they never got to it. But they did determine the governmental actor status because, you know, the easiest thing for Meyer to have done was to say, well, no, we're dealing with a private actor. That can't be asserted because a private actor is not subject to the Constitution. But it did. It went all the way to say, sorry, no Bivens claim against a federal agency acting as receiver. Not because it wasn't a governmental actor, but because of other reasons, namely that Bivens would lose its deterrent effect. Yes, do you have another point? That actually strikes me as quite beside the point. As Judge Kayada says, they did not reach this issue. That's the end of it. What is your other point? The next point is to address the sue-and-be-sue clauses. O'Melveny says that the federal agency receiver steps into the shoes based on the powers that existed beforehand. All of the examples that my brother cited involved things that were not set up by Congress to begin with. And also that FHFA itself is a federal agency. That's what Harris says. Isn't the logic of your argument that this court was wrong earlier when we said Fannie Mae is not a government agency? I thought that actually it did in the case about the Merrill Doctrine. All right, thank you. Your time is up. Thank you, Mr. Fischbach. That concludes argument in this case.